UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNTOINETTE LYNN DAVIS,

       Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

Civil Action No. 10-14518

HON. GERALD E. ROSEN
U.S. District Judge
HON. R.  STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Antoinette Lynn Davis brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Doc. #12] be DENIED and Plaintiff's motion GRANTED [Doc. #9] to the extent that the case is remanded to the administrative level for further proceedings pursuant to sentence four of § 405(g).

## PROCEDURAL HISTORY

On September 12, 2006, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability as of November 2, 2001 (Tr. 94-96).  After the initial denial of the claim, Plaintiff filed a timely request for an administrative hearing, held on May 6, 2010 in Chicago, Illinois before Administrative Law Judge ("ALJ") Paul Gaughen (Tr. 9). Plaintiff, represented by attorney Armin Fischer, testified by teleconference (Tr. 15-23).

Vocational Expert ("VE") Frank Mendrick also testified (Tr. 23-29).  On May 27, 2010, ALJ Gaughen found that Plaintiff was not disabled (Tr. 44).  On October 25, 2010, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed for judicial review of the final decision on November 12, 2010.

## BACKGROUND FACTS

Plaintiff, born February 25, 1961, was 49 when the ALJ issued his decision (Tr. 44, 94).  She completed at least four years of college and worked previously as an investigator for a state agency (Tr. 104, 111).  She alleges disability as a result of depression, anxiety, stress, back pain, hip pain, and fatigue (Tr. 103).

### A.     Plaintiff's Testimony

*The ALJ began the hearing by noting that Plaintiff's eligibility for benefits ended on March 31, 2007 and thus, Plaintiff would be required to show that her disability began before  or on that date* (Tr. 12)*.*

Plaintiff testified that she received a Bachelor's degree in criminal justice and worked previously for Michigan's Family Independence Agency ("FIA") as an investigator (Tr. 15). She reported that approximately 70 percent of her work time had been spent "out in the field" (Tr. 16).  She reported that prior to working as an investigator, she worked as a career counselor (Tr. 17).

Plaintiff testified that she stopped working in 2001 because of a high risk pregnancy, adding that she did not return to work after giving birth because of "depression, anxiety and stress" (Tr. 17).  She reported that she felt overwhelmed and cried on a daily basis (Tr. 18). She stated that she experienced sleep disruption and a poor attention span, noting that her psychological problems had been exacerbated by the loss of four prematurely born children (Tr. 19, 21).  Plaintiff stated that she was also a borderline diabetic and experienced back

pain (Tr. 22). She reported that psychotropic medicine improved symptoms (Tr. 18). Plaintiff indicated that she previously cared for her husband while he was recovering from a stroke, adding that he had returned to work approximately three years ago (Tr. 19).

Plaintiff reported that a typical day might include physical therapy, taking her children to school, reclining with a heating pad, preparing a simple dinner, and helping her children with their homework (Tr. 20). She testified that she attended church and Bible study regularly (Tr. 20).

### B.    Medical Evidence

### 1.    Treating Sources[1]

A June, 1997 psychiatric intake assessment by Kathleen Brazzle states that Plaintiff had a GAF of 45[2] (Tr. 596). In October, 2001, Plaintiff delivered twins via Cesarean section (Tr. 176). In April, 2002, Plaintiff told Dr. Brazzle that she felt overwhelmed caring for her premature babies (Tr. 582). Counseling notes from October, 2002 state that Plaintiff held a birthday party with 20 guests for the one-year birthday of her twin children (Tr. 577). In December, 2002, Plaintiff reported traveling with her family by car from Michigan to Louisiana and back (Tr. 576). A June, 2003 chest x-ray and imaging studies of the liver were normal (Tr. 329-331). The same month, counseling notes show that Plaintiff demonstrated increased focus (Tr. 400). In January, 2004, Michael Margolis, M.D. noted that Plaintiff currently took Lexapro and Desyrel for depression (Tr. 275). Imaging studies of the small

---

[1]Treating records pertaining to Plaintiff's condition before the alleged onset date and after the date last insured of March 31, 2007 are included for background purposes only.

[2]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* ) (4th ed.2000).

bowel performed in April, 2004 were unremarkable (Tr. 250).

A July, 2004 psychological intake assessment found that Plaintiff experienced depression and anxiety (Tr. 337). Plaintiff reported that her symptoms began during a 2001 high risk pregnancy (Tr. 338). She exhibited a depressed and anxious mood with a restricted affect, but her demeanor was otherwise unremarkable (Tr. 339). She was deemed "bright" and "educated" with a "good reasoning process" (Tr. 340). She was assigned a GAF of 56 and given a "good" prognosis[3] (Tr. 340). September, 2004 progress notes state that Plaintiff appeared "appropriate in appearance" (Tr. 351). In November, 2004, she sought emergency treatment for anxiety, noting that her husband had recently suffered a stroke (Tr. 230). She was prescribed Wellbutrin and Xanax (Tr. 231). The following month, Dr. Margolis noted that Plaintiff was experiencing stress as a result of her husband's recent stroke (Tr. 266).

In February, 2005, counseling notes state that Plaintiff demonstrated improved problem-solving skills (Tr. 364). A March, 2005 intake assessment by Sabiha J. Omar, M.D. noted that Plaintiff complained of poor organizational skills and stress, but that she had been able to keep up with household chores and was acting as a conservator and guardian for her recovering husband (Tr. 372). She denied suicidal ideation, noting that her husband was supportive (Tr. 372-373). Dr. Omar assigned her a GAF of 50 to 55 (Tr. 373). In June, 2005, Plaintiff's ability to concentrate was deemed "poor," but she was appropriate in appearance (Tr. 369). In October, 2006, imaging studies of the lumbosacral spine were unremarkable (Tr. 515).

In January, 2008, Plaintiff reported to Dr. Brazzle that her therapist was unsatisfactory

---

[3]

A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 30 (4th ed.2000).

(Tr. 644). In March, 2008, Dr. Brazzle opined that Plaintiff had "been disabled and unable to work in any capacity since 2001" because of a 20-year history of mental and emotional difficulties (Tr. 547). In September, 2008, Plaintiff told Dr. Brazzle that her husband was urging her to work to alleviate the family's financial problems (Tr. 628). Dr. Brazzle's March, 2010 treating notes state that Plaintiff felt "increasingly overwhelmed" (Tr. 624). In May, 2010, longtime treating physician Sampson Kpadenou, M.D. opined that Plaintiff's anxiety and depression "[did] not seem to get any better" (Tr. 650). The same month, Dr. Brazzle found that Plaintiff's depression, anxiety, and poor concentrational skills prevented her from performing even simple work (Tr. 652-656). She assigned Plaintiff a GAF of 43 (Tr. 652).

### 2. **Non-Treating Sources**

A January, 2009 consultive psychological evaluation performed on behalf of the SSA noted that Plaintiff's mother and maternal grandfather were diagnosed with schizophrenia (Tr. 647). Plaintiff denied hobbies or socializing with friends (Tr. 647). She reported that she spent her day caring for her three children (Tr. 647). She noted that her husband had experienced a stroke in 2008 and that currently, a caretaker came to the house for an hour and a half every day (Tr. 647). Margaret Zerba, Ph.D. observed that Plaintiff was in touch with reality with fair judgment and insight (Tr. 648). Dr. Zerba assigned Plaintiff a GAF of 45 (Tr. 649).

Also in January, 2009, a Psychiatric Review Technique by Leonard C. Balunas, Ph.D. found the presence of affective and anxiety-related disorders (Tr. 604, 607, 609). Under the "'B' Criteria," Dr. Balunas found that Plaintiff experienced moderate restrictions in daily living, social functioning, and maintaining concentration, persistence and pace (Tr. 614). He noted that Plaintiff continued to shop, perform household chores, and drive, finding her

claims only partially credible (Tr. 616).  He concluded that Plaintiff would have "trouble doing any demanding, complicated work that required multiple steps and a lot of pressured interaction with others" (Tr. 616).

Dr. Balunas also completed a Mental Residual Functional Capacity Assessment, finding that Plaintiff experienced moderate work-related limitations in understanding and carrying out detailed instructions and maintaining concentration for extended periods (Tr. 618).  Plaintiff's ability to interact appropriately with the public and respond to workplace changes was also deemed moderately limited (Tr. 619).  He concluded that Plaintiff could perform "unskilled work involving 1 and 2 step instructions" (Tr. 620).  The same month, a SSA case analysis concluded that Plaintiff's "physical symptoms seemed to be derived from her mental issues" (Tr. 599).

### C.   Vocational Expert Testimony

VE Frank Mendrick classified Plaintiff's past relevant work as an investigator as skilled and exertionally light[4] (Tr. 23, 148) .  The ALJ posed the following question to the VE, taking into account Plaintiff's age, education, and work experience:

> The worker presents for basic work activities with no exertional limitations, but there are behavioral health limitations. . ."[A]ssume . . . that this individual can do work which entails as part of it no more than but normal predictable work stressors, no unusual work stressors.  And also she would not be a good candidate now for independent work, which might require high level executive functioning, setting one's own schedule, travel as a part of a job, and/or work requiring a great deal of high-level social interaction.  . . . [T]his candidate would be the set, predictable routine with little need to adapt to substantial changes, and just routine demands for interaction with bosses, coworkers and

---

[4]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

the retail public.  Routine social discourse can be handled?

(Tr. 23-24).  The VE replied that the above limitations would preclude Plaintiff's former job, but allow the individual to use transferable skills to perform the jobs of mail clerk (3,500 positions in the regional economy); file clerk (4,000); and clerk typist (6,000).

The VE found further that if the individual were further limited by "considerable delays in learning new, detailed and complex information" and the inability to work at a "production-rate" pace, she could nonetheless perform the jobs of mail clerk and file clerk (Tr. 26).  In response to questioning by Plaintiff's attorney, the VE testified that if the same individual were unable to work "two to five days out of a month" due to anxiety, she would be unable to perform any of the above jobs (Tr. 29).

### D. The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that through the date last insured of March 31, 2007, Plaintiff experienced the severe impairment of "major depression with an anxiety disorder component" but that the condition did not meet or medically equal an impairment found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 37-38).  He found that Plaintiff's alleged back and hip pain were non-severe (Tr. 37).  The ALJ found that Plaintiff retained the following Residual Functional Capacity ("RFC"):

> [A] full range of work at all exertional levels but with the following nonexertional limitations: she cannot do work with more than the normal predictable work stressors.  She is not a good candidate for independent work which might require high level executive functioning, setting one's own schedule, traveling as part of a job and/or work requring a high level of social interaction.  She would need a set, predictable routine with little need to adapt to substantial changes.  Routine social discourse can be handled

(Tr. 39).  Consistent with the VE's job findings, the ALJ determined that Plaintiff retained transferable skills from her former work and could perform the semiskilled work of a mail clerk, file clerk, and clerk typist (Tr. 43).

-7-

In support of the non-disability finding, the ALJ found that Plaintiff's allegations "concerning the intensity, persistence and limiting effects" of her conditions were "not credible to the extent" they were inconsistent with the above RFC (Tr. 41). He noted that Plaintiff cared for her husband while he was recovering from a stroke and continued to perform household and childcare chores on a daily basis (Tr. 41-42).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Treating Physician Analysis

Plaintiff faults the ALJ for not according "any" weight to Dr. Brazzle's May, 2010 opinion. *Plaintiff's Brief* at 14-18 (citing Tr. 652-656). Citing *Smith v. Commissioner of Social Security,* 482 F.3d 873 (6th Cir. 2007), Plaintiff contends that the ALJ erred by instead adopting the findings of a non-examining source, Dr. Balunas. *Id.* at 15-18. She submits that the treating physician analysis is also undermined by the fact that the ALJ "did not give any indication [of] the amount of weight" he was giving to Dr. Brazzle's opinion. *Id.* at 15-16.

"[I]f the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted) (citing *Wilson*

-9-

*v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir.2004)). In the event the treating source opinion is not accorded controlling weight, an ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion." *Wilson,* at 544; 20 C.F.R. § 404.1527(d)(2)) .

The mere fact that a treating physician's opinion is contradicted by another source is not a sufficient basis for its rejection. *Hensley,* 573 F.3d at 267 ("Nothing in the regulations indicates, or even suggests, that the administrative judge may decline to give the treating physician's medical opinion less than controlling weight simply because another physician has reached a contrary conclusion."). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings. *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391-392 (6th Cir.2004).

Contrary to Plaintiff's "treating physician" argument, the ALJ's analysis of Dr. Brazzle's May, 2010 opinion is procedurally and substantively sound. Acknowledging Dr. Brazzle's status as a treating source, the ALJ nonetheless provided "good reasons" for rejecting the findings. First, the ALJ correctly noted that pursuant to SSR 96-5p, the issue of disability is specifically reserved to the Commissioner (Tr. 41). Second, he noted that contrary to Dr. Brazzle's findings that Plaintiff had "no useful ability" to understand or remember even short, simple instructions, Plaintiff continued to pick her daughter up at school, prepare meals, and perform household tasks (Tr. 41-42).

Dr. Brazzle's findings are not well supported by the record. While the treating records support the finding that Plaintiff experienced some degree of functional impairment as a result of anxiety and depression, Dr. Brazzle's finding of extreme impairment is contradicted

-10-

by her own treating notes and the record as a whole.   For example, treating notes state that Plaintiff admitted that after the alleged onset of disability, she was able to plan and execute a birthday party with 20 guests and travel to Louisiana with her family (Tr. 576-577).  Dr. Brazzle's opinion that Plaintiff was unable to make even simple decisions (Tr. 694) is undermined by the fact that Plaintiff continued to oversee her older child's education and was appointed to act as her husband's conservator and guardian during the months he was recovering from a stroke (Tr. 372).  Despite Plaintiff's contention, the ALJ was not obliged to adopt Dr. Brazzle's extreme findings.  *See Warner, supra.*  375 F.3d at 391-392.

Further, the fact that the ALJ did not ascribe a specific weight to Dr. Brazzle's opinion, *e.g.*, "no weight," "great weight," etc. does not constitute error given that a plain reading of the treating physician analysis clearly indicates that the ALJ placed little, if any reliance on the "disability" opinion for the reasons discussed above.  As such, the ALJ's well supported and explained analysis does not provide grounds for remand.

### B.  Credibility

Plaintiff argues next that the ALJ's credibility analysis did not conform to the requirements of SSR 96-7p which states that "[i]t is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegation have been considered' or that the allegations are (or are not) credible.'" *Plaintiff's Brief* at 18.  She asserts that contrary to the requirements of the Regulation, the ALJ's credibility determination consisted of a one-sentence "cavalier rejection of her condition and its impact on her life. . ." *Id.* (citing Tr. 41).

This argument is based on an erroneous reading of the record.  The ALJ's "conclusory" statement is drawn from the text of a three-page credibility analysis that

-11-

conforms to the requirements of SSR 96-7p[5] (Tr. 39-42). The ALJ noted that Plaintiff's allegations of disabling back and leg pain were unsupported by the treating records predating the March 31, 2007 expiration of benefits (Tr. 41). As discussed above, the ALJ observed that Plaintiff was able to perform household tasks, perform errands, and care for her husband during his recovery from a stroke (Tr. 41). Treating records from the relevant period state repeatedly that Plaintiff was appropriate in appearance (Tr. 339, 351, 369). The ALJ's thorough credibility analysis, well supported by substantial evidence, is entitled to the deference of this Court. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir.1993); *See also Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir.1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986)) (An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

### C. The Hypothetical Question

Plaintiff argues that the hypothetical question did not account for her full degree of limitation. *Plaintiff's Brief* at 19-21. Specifically, she contends that although the findings of non-examining source Dr. Balunas were adopted in the administrative opinion, the

---

[5]

C.F.R. 404.1529(c)(3); 416.929(c)(3) lists the factors to be considered in making a credibility determination:

> "(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

hypothetical question did not include Dr. Balunas' finding that she was limited to limited to work involving "1 and 2 step tasks." *Id.*; (Tr. 42, 620).  Plaintiff also faults the ALJ for failing to elicit testimony as to any conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"), arguing that the DOT job descriptions for mail clerk (#203.362.010), file clerk (#206.387.034), and clerk typist (#203.362.010) require more than one and two-step tasks. *Id.* at 20-21 (citing SSR 00-04).  She notes that the above jobs have a General Education Development ("GED") reasoning level of "3" or higher and are thus inconsistent with the finding that Plaintiff is capable of only one and two-step tasks. *Id.* at 20.

A hypothetical question constitutes substantial evidence only if it accounts for claimant's full degree of work-related impairment.  *Varley v. Commissioner of Social Security,* 820 F.2d 777, 779 (6th Cir. 1987). *Webb v. Commissioner of Social Sec.*, 368 F.3d 629 (6th Cir.2004), while rejecting the notion that an ALJ is required to list all of a claimant's maladies verbatim in the hypothetical question, nonetheless acknowledges that "[t]he hypothetical question ... should include an accurate portrayal of [a claimant's] individual physical and mental impairments." (internal citations omitted) *Id.* at 632 (citing *Varley,* 820 F.2d at 779 (6th Cir. 1987)). *See also Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001).

As to the GED, Plaintiff confuses apples with oranges.  The GED reasoning level pertains to the  educational background required to perform a job rather than the mental Residual Functional Capacity.   Whether Plaintiff, a college graduate, can perform work at a certain reasoning level is not at issue.   Nonetheless, the Step Five conclusion contains reversible error.

SSR 00–4p provides in pertinent part:

-13-

When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.

2000 WL 1898704, at *4. "In an effort to insure that such actual or apparent conflicts are addressed, the Social Security Administration has imposed an affirmative duty on ALJs to ask the VE if the evidence that he or she has provided 'conflicts with [the] information provided in the DOT.' " *Lindsley v. Commissioner of Social Sec.* 560 F.3d 601, 603 (6th Cir.2009) ( *citing* SSR 00–4p, 2000 WL 1898704, at *4). "ALJs must also 'obtain a reasonable explanation for ... apparent conflict[s]' if the VE's evidence "appears to conflict with the DOT." *Id.* ( *citing* 2000 WL 1898704, at *4). Here, the ALJ did not fulfill his duty to inquire about conflicts with the VE's testimony and the DOT.

While the failure to make the required inquiry is considered harmless error in the absence of a definable conflict, such is not the case here. First, the hypothetical limitations posed to the VE reflect a lesser degree of limitation than that found by Dr. Balunas, whose opinion the ALJ adopted. The ALJ stated that he gave "great weight to the reports of the State Agency physician, Dr. Leonard Balunas . . ." (Tr. 42), which would include Dr. Balunas' ultimate conclusion that Plaintiff could perform "unskilled work" (Tr. 620). In contrast, the hypothetical question posed to the VE did not limit Plaintiff to "unskilled" work (Tr. 23-24). Despite his statement that he gave "great weight" to Dr. Balunas's opinion, the ALJ did not so much adopt the findings as "cherry pick" the portions that supported a non-disability finding and ignore the rest. *See Laskowski v. Apfel,* 100 F.Supp.2d 474, 482 (E.D.Mich.2000) (Lawson, J.) (A non-disability finding "cannot be based on fragments of the record").

As a result, two of the VE's three job findings, file clerk (206.387.034) and clerk

-14-

typist (203.362.010) have a Specific Vocational Preparation ("SVP") of 3 and 4 respectively, making these jobs "*semiskilled*" work.[6]   Only the mail clerk position (DOT 203.362.010) with a SVP of 2 (placing it in the unskilled category) conforms with Dr. Balunas' adopted findings.

Second, the opinion is further muddled by the fact that after placing "great weight" on Dr. Blaunas'" unskilled work" findings, the ALJ erroneously stated at a later point that all three of the VE's job findings were "semiskilled" (Tr. 43).  Aside from the fact that only two of the three positions are semiskilled, the determination that Plaintiff could perform *any* semiskilled work stands directly at odds with Dr. Balunas' adopted findings.  The ALJ appears to rely on the finding that Plaintiff allegedly possessed "transferrable skills" from her former position as an investigator.  However, the fact that her past relevant work has transferrable skills is of no import if she is otherwise restricted to unskilled work.[7]

To be sure, the 3,500 unskilled mail clerk positions in the regional economy constitute a substantial number. *Born v. Sec'y of H.H.S.,* 923 F.2d 1168, 1174 (6th Cir.1990) (citing *Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir.1988)).  It might be therefore argued that deficiencies in the hypothetical question and VE's testimony are harmless.  However, the conflict between the ALJ's adoption of Dr. Balunas' "unskilled work" finding and the ultimate determination that Plaintiff could perform semiskilled work undermines both the RFC and the VE's job findings.   The ALJ's selective discussion of Dr. Balunas' findings (omitting his conclusion that Plaintiff was capable of only unskilled work) is particularly troubling in light of the fact that treating source opinion supports an even greater degree of

---

[6]http://www.ssa.gov/OP_Home/rulings/di/02/SSR2000-04-di-02.html.

[7] See fn. 6.

-15-

limitation.  *See Lowery v. Commissioner, Social Sec. Administration,* 2003 WL 236419, *5 (6th Cir.2003)(citing *Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir.1995)(An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning").

These errors, while critical, do not automatically entitle Plaintiff to benefits. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994). Rather, the appropriate remedy is a remand for further administrative proceedings consistent with this Report and Recommendation.   Upon remand, the ALJ must either explain and support his reasons for deviating from Dr. Balunas' "unskilled" finding, or amend the hypothetical question to reflect Dr. Balunas' conclusion that Plaintiff was limited to unskilled work.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment [Doc. #12] be DENIED and Plaintiff's motion [Doc. #9] GRANTED to the extent that the case is remanded to the administrative level for further proceedings, pursuant to sentence four of 42 U.S.C. sc 405(g) .

Any objections to this  Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date:  October 27, 2011

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on October 27, 2011.

s/Johnetta M. Curry-Williams
Case Manager